IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **CONTRACT DATASCAN, LP**, | § | |
| | § | |
| Plaintiff, | § | |
| v. | § | Civil Action No. **3:11-CV-1079-L** |
| | § | |
| **REGIS CORPORATION**, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Before the court are: (1) Plaintiff's Motion for Leave to Supplement the Record, filed June 9, 2011; (2) Plaintiffs' Application for Preliminary Injunction, filed as part of Plaintiff's Original Petition and removed to this court on May 23, 2011; (3) Defendant's Emergency Motion to Dissolve State Court TRO, filed May 25, 2011; and (4) Defendant's Motion for Expedited Consideration of Emergency Motion to Dissolve TRO, filed May 25, 2011.

After careful consideration of the application, motions, responses, briefs, appendices, record, and applicable law, the court: (1) **grants** Plaintiff's Motion for Leave to Supplement the Record; (2) **denies** Plaintiff's Application for Preliminary Injunction; (3) **denies as moot** Defendant's Emergency Motion to Dissolve State Court TRO; and (4) **denies as moot** Defendant's Motion for Expedited Consideration of Emergency Motion to Dissolve TRO.

## I. Background

The court held a preliminary injunction hearing concerning this matter on June 7, 2011, which lasted the whole day. The court heard testimony from corporate representatives of both Plaintiff Contract Datascan, LP ("Datascan") and Defendant Regis Corporation ("Regis"). Datascan president Paul Billings, Datascan vice president Jennifer Cusano, and Regis vice president Andrew

**Memorandum Opinion and Order – Page 1**

Priadka described the contractual relationship Datascan formed with Regis in 2005: Regis acquired Datascan's services to conduct inventory across Regis's various business locations. The contract was amended in 2007, and Datascan continued providing inventory services through 2010.

At the end of 2010, the contract between Datascan and Regis was not renewed, and Regis thereafter developed a system for conducting inventory. Datascan contends that Regis's inventory system is a "knock-off" of its own, and that the only way Regis could have developed such an accurate, reliable, and intuitive inventory system was by "stealing" Datascan's confidential information and trade secrets. Regis contends that its system was developed independently of Datascan.

## II.     Standard for Preliminary Injunction

There are four prerequisites for the extraordinary relief of a preliminary injunction. A court may issue a preliminary injunction only when the movant establishes that:

> (1) there is a substantial likelihood that the movant will prevail on the merits; (2) there is a substantial threat that irreparable harm will result if the injunction is not granted; (3) the threatened injury outweighs the threatened harm to the defendant; and (4) the granting of the preliminary injunction will not disserve the public interest.

*Clark v. Prichard*, 812 F.2d 991, 993 (5th Cir. 1987) (citing *Canal Auth. of the State of Florida v. Callaway*, 489 F.2d 567, 572 (5th Cir. 1974) (*en banc*)). The party seeking such relief must satisfy a cumulative burden of proving each of the four elements enumerated before a preliminary injunction can be granted. *Mississippi Power & Light Co. v. United Gas Pipeline*, 760 F.2d 618, 621 (5th Cir. 1985); *Clark*, 812 F.2d at 993. Otherwise stated, if a party fails to meet *any* of the four requirements, the court cannot grant the preliminary injunction.

### III. Analysis

Although State District Judge Eric Moyé determined that a temporary restraining order was warranted in accordance with state law and in light of the facts presented to him, he did not have the benefit of a day-long evidentiary hearing and a full round of briefing on the matter, as did this court. Now, in light of a developed record, replete with testimony from the corporate representatives of Regis and Datascan, scores of exhibits from each side, and an abundance of written and oral arguments, the court weighs the four factors above in connection with Plaintiff's Application for Preliminary Injunction.

#### A. Substantial Likelihood of Success on the Merits

Datascan argues that it has a substantial likelihood of success on the merits with respect to its claims for misappropriation of trade secrets, breach of fiduciary duty, and breach of contract. Datascan contends that its system philosophy and inventory process are trade secrets, a contention that was maintained by Datascan's corporate representatives during their testimony at the hearing. Datascan draws a distinction, however, between the general concepts used in the inventory industry and Datascan's specific process (which Regis allegedly stole) to perform such concepts.

Principally, Datascan asserts that Regis breached its contractual licensing agreement by violating a key provision wherein Regis agreed that Datascan's "software and system philosophy are trade secrets" of Datascan and that "any information, documents, or user's manuals relating to the software and system philosophy are [Datascan's] confidential information." Pl.'s Ex. 1, at 3-4 ¶ 7. Moreover, Regis agreed that it would "not copy, disclose, make known, divulge or communicate the same to any others" and not "modify, adapt, translate, reverse engineer, decompile,

disassemble, create or assist others in creating derivative works based on the software being rented . . . ." *Id.*

It is undisputed that Regis ultimately elected to create an inventory system to save on costs. Regis corporate representative Andrew Priadka testified, however, that Regis did not rely on any of Datascan's materials, proprietary ownership, or confidential information in developing the replacement inventory system. Datascan hotly contests Mr. Priadka's testimony and argues that such testimony is incredulous. In support of its position, Datascan turns to Mr. Priadka's deposition testimony in which he testified that any knowledge gained from earlier dealings with Datascan's inventory system "could not be erased" from the mind, and that some of those ideas were inescapably "carried forward." Pl.'s Resp. (dkt # 29) App. 4 [159:17-160:4].

The court does not believe that Mr. Priadka's deposition testimony is fatal to Regis's defense against Datascan's claims. Such deposition testimony is consistent with Mr. Priadka's testimony at the hearing, where he testified that all of the "confidential information" identified by Datascan in its response to interrogatories, line by line, was either: already known to Regis or used by Regis prior to its relationship with Datascan; a customization that Regis requested; not unique or was an industry standard; and/or disclosed to Regis by Datascan prior to any signing of a confidentiality agreement. Candidly, after hearing all of the testimony and evidence from both sides, the court finds difficulty in differentiating what is exclusively Datascan's from what is available publicly or as an industry standard in Regis's system.

The court's reservation arises from the nebulous and murky nature of Datascan's descriptions of its "trade secrets" and "confidential information." For example, when Datascan president Paul Billings was asked to describe Datascan's trade secrets, he used phrases such as "methodology . .

. combined together" and the "system in total." Hr'g Tr. 17:5-8; 18:8-11. Datascan vice president Jennifer Cusano had similar answers when she was asked to identify three items that Regis had misappropriated. She identified a "simplistic system that is intuitive," a "a system that . . . [is] fast, effective, [and] accurate," and a "scanner interface [and] website . . . reporting side." Hr'g Tr. 118:20-119:7. Although the court understands the plain meaning of words like "methodology" and "system," and "intuitive," such phrases in this context act only as amorphous concepts that have not been adequately explained or defined by Datascan. Regis's overarching objection to the temporary restraining order issued by the state court is that its terms are too broad, and its definition of Datascan's "confidential information" overreaches. The court agrees.

When testifying at the hearing, Mr. Billings stated that everything used in Datascan's inventory system is a Datascan trade secret when a confidentiality agreement is in play. Hr'g Tr. 47:20-48:3. When confronted whether this included information available in the public domain, Mr. Billings did not provide a direct answer. *Id.* at 48:4-14. He suggested, however, that even information that is otherwise available publicly could not be used by Regis because Regis agreed not to misappropriate *any* part of Datascan's inventory system. *Id.* at 48:20-49:7. Therefore, according to Mr. Billings, Regis was not at liberty to use common phrases such as "shelf," "salon," "back room," and "front room" in its system because Datascan used those terms first and Regis signed a confidentiality agreement. *See id.* The court believes that this extension of Datascan's "confidential information" goes too far and is unwarranted at this stage of the proceedings.

Datascan used the example of a cola recipe as an analogy to its inventory system. Whereas the cola recipe uses publicly available ingredients, such as sugar, syrup, and water, the method of mixture and the measured amounts of each ingredient – that is, the recipe itself – are trade secrets.

Datascan submits that its own process of efficiently conducting inventory – including its software, hardware, and instruction manuals – is no different from the cola recipe. The court disagrees, and it views the cola recipe example as a situation completely different from Datascan's inventory system. Mr. Priadka's testimony is undisputed in that Regis never had access to the source code developed by Datascan to create its software, website, and system. That is to say that Regis never had access to a detailed list of the precise quantities and mixture of ingredients necessary to replicate Datascan's methodology or system. The evidence presented reasonably supports a conclusion that what Regis learned from its interaction with Datascan's system was an idea of what worked well in a system for conducting inventory, a system that Regis one day hoped to develop for its own use.

Mr. Priadka testified that Regis was developing an inventory system for Regis's internal use in an effort to save and reduce the costs of conducting inventory; he further suggested that the development evolved in such a way that greatly exceeded Regis's initial expectations. *See* Hr'g Tr. 220:14-221:25. There is no evidence that Regis ever intended or intends to use its system to encroach on Datascan's market share of the inventory conducting industry; Ms. Cusano even testified that she did not believe that Regis had any such plans. *Id.* at 142:20-143:9. Even if the court assumes that some of Regis's system was inspired by working with Datascan, the situation becomes extremely difficult and eventually impossible for the court to separate what Regis developed on its own, from its own practice and experiences, with any specific methodology Regis may have acquired from Datascan. Any process or methodology, including that of an inventory system, necessarily evolves over time based on the developing entity's individual trial and error.

Although Datascan directs the court to what appears to be close similarities between each party's respective instruction manuals and inventory stickers, the court finds it near impossible to

distinguish between what might have been "stolen" and what just makes practical sense for use in conducting an inventory system or what is standard in the industry and not unique. Ms. Cusano testified, for example, that she could not be sure if Datascan's scanners would even work with Regis's stickers and vice versa. The court believes that if the two systems are not completely interchangeable with each other, then reasonable jurists could conclude that one is not just a stolen "knock-off" of the other. Misappropriation and mere inspiration are two different things, and the court does not believe that Datascan draws an adequate distinction between the two.

In essence, the court determines that the outcome on Datascan's claims could go in either direction. Datascan could ultimately prevail on the merits at trial, or it could lose. This court tried a case two years ago with the same claims in which the evidence was more favorable to the plaintiff than it is for Datascan in this case, and the jury ruled against the plaintiff. The evidence presented by Datascan falls well short of the "*substantial likelihood*" standard required before a court may grant a preliminary injunction.

### B. Substantial Threat of Immediate and Irreparable Harm

The court has even greater difficulty in making the determination that Datascan will suffer a substantial threat of immediate and irreparable harm if the preliminary injunction is not granted. Datascan's chief concerns are that Regis has been unfairly competing and will continue to unfairly compete against Datascan and that Regis has and will continue to disseminate Datascan's "trade secrets" to Datascan's competitors.

With respect to unfair competition, Datascan essentially contends that Regis is unfairly competing by taking its own business away from Datascan. The court is unpersuaded by this argument because, even if Regis is competing unfairly with an inventory system it misappropriated

**Memorandum Opinion and Order – Page 7**

from Datascan, the injury, if any, could be cured with money damages. Datascan had no objection to Regis's access to Datascan's inventory system when the parties were under contract with each other and Regis was paying approximately $3 million annually for Datascan's inventory services. Now that Regis is no longer paying Datascan to conduct its inventory, Datascan represents that it will suffer immediate and irreparable harm if such use persists, ostensibly because Datascan would not be adequately compensated. Yet, the purpose of money damages it to compensate a wronged party and make that party whole. If Regis is truly competing unfairly against Datascan by wrongfully using Datascan's system, the court believes that the proper remedy is to require Regis to pay Datascan the appropriate amount of damages allowed under the law—not to bar such use entirely.

With respect to disseminating Datascan's "trade secrets" to competitors, Datascan points to Regis's decision to involve Storeworks Technologies during the creation of Regis's inventory system. Datascan contends that during the exchange Regis necessarily divulged Datascan's "trade secrets" to Storeworks Technologies to develop its inventory system. In keeping with its discussion in the preceding section, however, the court does not believe the record sufficiently establishes that this is true. With respect to what Regis communicated to Storeworks Technologies, it is impossible for the court to differentiate what Regis knew independently of Datascan, or what was standard in the industry or in the public domain, from any precise skill or methodology that Regis specifically acquired from Datascan. Moreover, Storeworks Technologies assigned all rights in the software it wrote for Regis to Regis. Def.'s Resp. (dkt #28) App. 56-58.

Datascan also fears that Regis's vast number of employees, who will use and become familiar with Regis's inventory system, are under no obligation to guard Datascan's trade secrets

and will disclose and disseminate them, causing harm. The court believes that Datascan's fears are unreasonable. When Regis was under contract with Datascan, the same risk was present. Mr. Priadka testified that Regis's employees never signed personal confidentiality or nondisclosure agreements to keep Datascan's "trade secrets" confidential when they used Datascan's inventory system. Moreover, the court again finds difficulty in differentiating Datascan's purported "trade secrets" from the information already known to Regis or information available in the public domain or standard in the industry. Even if Regis's system is "stolen" from Datascan, the court is convinced that money damages could adequately compensate Datascan for its loss.

### C. Greater Resulting Harm

In light of its analysis above, the court cannot say that greater harm would result from denying the preliminary injunction than from granting it. It is undisputed that Regis has already incurred significant expense to create a workaround for conducting inventory while being prohibited from using its inventory system. Additionally, the court has trouble concluding that harm will result to Datascan if the preliminary injunction is denied. The effect, if any, that denying the preliminary injunction will have on Datascan's 6% market share is unclear; there is simply no evidence in the record to suggest a danger to Datascan's percentage hold on the market.

Further, the court questions Datascan's efforts up until now to guard its "trade secrets" and "confidential information." The testimony at the hearing revealed that Datascan's inventory system and methodology are not protected by patent. Furthermore, as the testimony of Ms. Cusano and Mr. Priadka revealed, Datascan does not always require a prospective client to sign a confidentiality or nondisclosure agreement before Datascan performs a mock inventory demonstration. Accordingly,

Datascan has failed to establish that greater resulting harm will be averted through granting the preliminary injunction.

### D. The Public Interest

Datascan submits that the public interest will be served because the public has an interest in seeing the terms of a contract honored and enforced. The court agrees with the general proposition that the public has an interest in seeing contracts enforced, but the court cannot say at this point whether the contract at issue in this case has been breached. Given the court's prior determination that the outcome on the merits of Datascan's claims is up in the air at this point, the public interest cannot accurately be weighed. Accordingly, the court determines that the public interest does not militate in favor of a preliminary injunction.

### E. Plaintiff's Motion for Leave to Supplement the Record

Datascan filed a motion for leave to supplement the record with excerpts from Mr. Priadka's deposition testimony contemporaneously with its post-hearing brief on June 9, 2011. In the interest of a complete record, the court **grants** Plaintiff's Motion for Leave to Supplement the Record, and the deposition excerpts attached to Datascan's motion are hereby deemed as filed as of the same date that Datascan submitted the motion.

### F. Defendant's Emergency Motions to Expedite and Dissolve the TRO

In light of the court's foregoing analysis, the court believes that Defendant's Emergency Motion to Dissolve State Court TRO, and Defendant's Motion for Expedited Consideration of Emergency Motion to Dissolve TRO, both filed by Regis on May 25, 2011, are moot. The court accordingly **denies as moot** Defendant's Emergency Motion to Dissolve State Court TRO, and

**denies as moot** Defendant's Motion for Expedited Consideration of Emergency Motion to Dissolve TRO.

## IV. Conclusion

For the reasons stated herein, the court determines that Datascan has failed to carry its burden and establish *each* of the four elements necessary for preliminary injunctive relief. The court accordingly **denies** Plaintiff's Application for Preliminary Injunction. As the court determines that Datascan is not entitled to preliminary injunctive relief, the court necessarily **dissolves** the temporary restraining order issued by the state court pursuant to 28 U.S.C. § 1450, and *such order is no longer in effect.*

**It is so ordered** this 15th day of June, 2011.

                                                    Sam A. Lindsay
                                                    United States District Judge